MILLS, Judge.
Stan Musial & Biggies, Inc. (SM & B) seeks review of a final order of the Department of Revenue (Department) upholding a deficiency assessment of corporate income taxes alleged to be due the State from SM & B for the calendar year 1972.
SM & B contends that the apportionment formula set forth in Section 214.17, Florida Statutes (1971), and applied by the Department in arriving at the deficiency assessment was not applicable to it because it was not a unitary business.
SM & B was a foreign corporation subject to the Florida Corporate Income Tax imposed by Chapter 220, Florida Statutes (1971), for the calendar year 1972.
In 1964, SM & B acquired a one-third interest in the Bal Harbour Joint Venture which owned and operated the Ivanhoe Hotel and Restaurant in Bal Harbour, Florida. By 1967, SM & B’s interest in the hotel and restaurant had increased to 95 percent, and by 15 December 1972, had increased to 100 percent.
On 31 December 1972, SM & B was the sole owner of the Ivanhoe Hotel and Restaurant.
On 16 November 1972, SM & B acquired, by merger, a 100 percent interest in the Clearwater Beach Hilton, a motel and restaurant business located in Clearwater, Florida, and on 31 December 1972, continued to own 100 percent of the Clearwater Beach Hilton.
On 2 November 1972, SM & B sold certain securities which resulted in a realized gain to it for federal income tax purposes of $941,418.00. Eighty-five percent of the securities that were sold on 2 November 1972 and are the subject of the Department’s assessment, were purchased before 1 August 1964 or received as stock dividends from stock purchased prior to that date. All purchases were made with money earned from its Missouri restaurant. SM & B did not have any interest in any Florida business when this stock was purchased. At all times the securities remained in Missouri and all dividends were received in Missouri. The securities were sold in Missouri. At the time of the sale, SM & B had no interest in the Clearwater Hilton, it merely held an interest in the partnership which owned the Ivanhoe Hotel and Restaurant.
SM & B timely filed its Florida Corporation Income Tax Return for 1972 on which it subtracted from its federal taxable income the gain from the sale of the securities and thus reported its “Florida Net Income” and its “Total Tax Due” as “None”.
On or about 8 May 1974, the Department advised SM & B of a proposed deficiency in SM & B’s 1972 Florida Corporation Income Tax in the amount of $29,392.00.
On or about 7 June 1974, SM & B timely filed with the Department its protest of the proposed deficiency assessment in accordance with the provisions of Section 214.71, Florida Statutes (1971).
On or about 13 August 1974, after a hearing held by the Department in accordance with the provisions of Section 214.71, the Department issued to SM & B its Notice of Decision in which the proposed deficiency was reduced to $25,712.80.
On or about 8 October 1974, SM & B filed with the Department its written request for reconsideration of the Department’s Notice of Decision. The parties stipulated that further proceedings in this cause would be processed under the Florida Administrative Procedure Act.
*377 The Ivanhoe and Clearwater Beach Hilton Hotel and Restaurant businesses in Florida and SM & B’s restaurant business in Missouri had separate, individual general managers.
One SM & B vice president was in charge of the two Florida businesses, and another vice president was in charge of the Missouri business. The actions of the two vice presidents were subject to review concerning policy matters by SM & B’s board of directors, whose chairman was Stan Musial.' The Florida businesses furnished information and reports concerning business activities to SM & B’s main office on a semiweekly basis. There was no central purchasing by the hotels. There were no central reservation services available between the hotels, and the hotels advertised separately and unilaterally in local publications in the cities in which they were located. No standardized product lines existed.
After a hearing, the hearing officer recommended that the deficiency assessment be vacated and that Musial be permitted to file an amended 1972 return using a method of apportionment approved by the Department which would effectuate an equitable apportionment of Musial’s income in Florida. The Department rejected the hearing officer’s recommendations. It upheld the deficiency assessment because in its judgment the three factor formula specified in Section 214.71 fairly apportioned Musial’s tax base.
The Florida Corporate Income Tax Code imposes upon corporations an excise or privilege tax measured by net income. Section 220.11(2). A taxpayer’s net income is defined to be that share of its adjusted federal income which is apportioned to Florida under the provisions of Section 220.-15, less the annual exemption allowed by Section 220.14. Section 220.12(1). Section 220.15 provides that adjusted federal income shall be apportioned to the State in accordance with Part IV of Ch. 214, as the apportionment fraction described in Section 214.71 is modified in Section 220.15(4).
Part IV of Chapter 214 sets forth the methods of determining the extent of the taxpayer’s tax base attributable to Florida. Section 214.71, as modified by Section 220.-15, sets forth the general method of apportionment except as otherwise provided in Sections 214.72 and 214.73, and includes a three-factor formula.
The three factors are (1) property, (2) payroll, and (3) sales. Each of these factors is determined by dividing the property (payroll or sales) of the taxpayer owned, located or used in Florida by the taxpayer’s property (payroll or sales) owned, located or used elsewhere. Property and payroll factors are then multiplied by 25 percent, the sales factor is multiplied by 50 percent, and the sum of the three is the apportionment factor. The apportionment factor is, in turn, multiplied by the taxpayer’s adjusted federal income to yield the taxpayer’s tax base, or net income for the taxable year. The amount of tax liability is 5 percent of the net income for the taxable year less the $5,000 exemption provided by Section 220.-14.
Fla.Admin.Code Rule 12C — 1.15(4), which implements Section 214.71, provides in pertinent part:
“(4) General Method
(a) Taxpayers who have income from sources within and without Florida are taxable upon the adjusted federal income apportioned to Florida in accordance with Part IV of Chapter 214, F.S.
Where the Florida activities are a part of a unitary business carried on within and without Florida, the portion of the taxpayer’s income subject to tax in Florida will generally be determined by a three-factor formula of property, payroll and sales.
The activities of the taxpayer will generally be considered a unitary business if the segments under consideration are integrated with, dependent upon, or contribute to each other and the operations of the taxpayer as a whole, although the facts of each case will be the major determinant. A strong presumption of a unitary business is created by the presence of any of the following factors:
1. Same type of business.
*378 2. Steps in a vertical process. .
3. Strong centralized management.
[[Image here]]
Section 214.72 provides for the method of apportionment for certain special industries. Section 214.73 provides for other methods of apportionment as follows:
“If the apportionment methods of sections 214.71 and 214.72 do not fairly represent the extent of a taxpayer’s tax base attributable to this state, the taxpayer may petition for, or the department may require, in respect to all or any part of the taxpayer’s tax base, if reasonable:
(1) Separate accounting;
(2) The exclusion of any one or more factors;
(3) The inclusion of one or more additional factors which will fairly represent the taxpayer’s tax base attributable to this state; or
(4) The employment of any other method which will produce an equitable apportionment.”
In implementation of Section 214.73 the Department promulgated Fla.Admin.Code Rule 120-1.15(6), which provides in pertinent part:
“Section 214.73 permits a departure from the apportionment methods of Sections 214.71 and 214.72, only in limited and specific cases. Section 214.73 may be invoked only in specific cases where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment provisions contained in Sections 214.71 and 214.72.”
We agree with SM & B that it was not a unitary business in 1972. Under the facts of this case, the Missouri and Florida segments of SM & B were not integrated with, dependent upon or contributing to each other.
The Missouri segment operated a restaurant. The Florida segment operated two hotels with restaurants but the major activity was the hotel operation. Each segment was engaged in a different line of business.
Each segment did its own advertising, purchasing, bookkeeping and had its own managers. There was a lack of strong centralized management.
We do not agree with SM & B that because it was not a unitary business it was not subject to the three factor apportionment formula provided by Sections 214.-71 and 220.15(4). The three factor apportionment formula is required unless the taxpayer demonstrates a unique and nonrecurring situation making utilization of the formula unfair. SM & B has proved such a unique and nonrecurring situation here.
The hearing officer properly applied the applicable law to the facts of this case in her recommended order. Section 214.73 and Fla.Admin.Code Rule 12C-1.15(6) govern the disposition of this case.
The capital gain realized by SM & B from the sale of its securities is totally unconnected with its Florida businesses. The gains in the amount of $941,418.00 were the result of an isolated situation in which securities were purchased, held and sold in Missouri and constitute an element of income far removed from any contacts with the State of Florida. To totally and without modification include such gain would not fairly represent the extent of SM & B’s tax base attributable to Florida. To apply to SM & B the general method of apportionment set forth in Sections 214.71 and 220.-15(4) would produce an inequitable, unreasonable and unfair result.
We grant the petition for review, reverse the final order of the Department of Revenue and remand this case to the Department with instructions to utilize Section 214.73 in recomputing SM & B’s 1972 Florida Corporation Income Tax so that a formula is used which will equitably apportion SM & B’s income to the State of Florida.
McCORD, C. J., and ERVIN, J., concur.